727 So.2d 720 (1998)
Charlie MOSS a/k/a Charlie Mac Moss a/k/a Charles M. Moss, Appellant,
v.
STATE of Mississippi, Appellee.
No. 97-KA-00331 COA.
Court of Appeals of Mississippi.
July 28, 1998.
Rehearing Denied September 29, 1998.
*722 Anthony J. Buckley, David Lee Sullivan, Laurel, Attorneys for Appellant.
Michael C. Moore, Attorney General by Pat S. Flynn, Special Asst. Atty. Gen., Jackson, Attorneys for Appellee.
Before THOMAS, P.J., and DIAZ and HERRING, JJ.
THOMAS, Presiding Judge, for the Court:
¶ 1. Charles M. Moss appeals his conviction of murder raising the following issues as error:
I. THE COURT ERRED IN ALLOWING THE STATE TO AMEND THE INDICTMENT BY MOTION AS THE CHANGE WAS ONE OF SUBSTANCE AND NOT ONE OF FORM.
II. THE AMENDED MURDER INDICTMENT IS WHOLLY VOID FOR NOT INCLUDING THE NECESSARY LANGUAGE "DID."
III. THE TRIAL COURT ERRONEOUSLY ALLOWED THE ADMISSION AND PREJUDICIAL USE BY THE PROSECUTOR OF EVIDENCE OF OTHER BAD ACTS, MISCONDUCT, AND CRIMES, WHOSE PREJUDICIAL EFFECT OUTWEIGHED ANY PROBATIVE VALUE. FURTHER, THE TRIAL COURT ERRED IN NOT GIVING, SUA SPONTE, A LIMITING INSTRUCTION ON THE MRE 404(B) EVIDENCE.
IV. IT WAS ERROR FOR THE PROSECUTOR IN FINAL SUMMATION TO ARGUE TO THE JURY THAT MANSLAUGHTER WAS NOT AN EXCUSE UNDER MISSISSIPPI LAW.
V. IT WAS PLAIN ERROR FOR THE PROSECUTOR TO EGREGIOUSLY COMMENT ON THE DEFENDANT'S RIGHT NOT TO TESTIFY.
Finding no error, we affirm.

FACTS
¶ 2. Charles and Sabrina Moss had been married about one and a half years when Sabrina decided to end the marriage. Sabrina moved out of her mother-in-law's house, where she and Charles had been living, taking their three-month-old daughter with her. On February 24, 1996, Sabrina returned to her mother-in-law's home to get clothing and personal items belonging to her and her daughter. Her father and an officer from the Ellisville Police Department accompanied her. Her father and the officer waited outside while Sabrina went inside. A few minutes later, they heard shots. The officer called for back up, and when help arrived, officers entered the house to find Sabrina dead from a single gun shot wound. Charles Moss had also shot himself in the face, but he survived.
¶ 3. Christine Moss, Charles Moss's mother, was in the home when the shooting occurred. She testified that she asked Charles to keep the door open to the bedroom where he and Sabrina were talking. Christine stated that she went back to the room another time to open the door because she did not want any trouble. She testified that she was going back to the bedroom another time and saw Charles walking down a hallway toward the bedroom door and realized the Charles had a shotgun in his hand. Christine stated that Charles had closed the door by the time she reached the bedroom, but she struggled and was able to get into the bedroom. Christine grabbed Charles's arm, but he was able to push her back and shoot Sabrina with the shotgun. Christine ran from the room.
¶ 4. Charles chose not to testify on his own behalf. After deliberation the jury returned a verdict of guilty of murder.

ANALYSIS

I.

THE COURT ERRED IN ALLOWING THE STATE TO AMEND THE INDICTMENT BY MOTION AS THE CHANGE WAS ONE OF SUBSTANCE AND NOT ONE OF FORM.
¶ 5. Shortly before trial, the district attorney moved the trial court for an amendment to the indictment to add the words "Jones County," which had been inadvertently left out due to clerical error. Over objections from the defense, the judge allowed the *723 amendment. Moss argues that the amendment was one of substance, not form, and could be made only by the grand jury.
¶ 6. "It is fundamental that courts may amend indictments only to correct defects of form, however, defects of substance must be corrected by the grand jury." Lester v. State, 692 So.2d 755, 774-75 (Miss.1997) (quoting Rhymes v. State, 638 So.2d 1270, 1275 (Miss.1994)).
It is well settled in this state, as was noted by the learned circuit judge, that a change in the indictment is permissible if it does not materially alter facts which are the essence of the offense on the face of the indictment as it originally stood or materially alter a defense to the indictment as it originally stood so as to prejudice the defendant's case.
Lester, 692 So.2d at 775 (quoting Shelby v. State, 246 So.2d 543, 545 (Miss.1971)). "An indictment may only be amended at trial if the amendment is immaterial to the merits of the case and the defense will not be prejudiced by the amendment.... The test ... is whether the defense as it originally stood would be equally available after the amendment is made." Eakes v. State, 665 So.2d 852, 859-60 (Miss.1995) (citations omitted).
¶ 7. The State cites the case of Brooks v. State, 573 So.2d 1350 (Miss.1990), as dispositive of this issue. In Brooks, the Court held that amending an indictment to show that it was returned by the grand jury of Lowndes County was procedural, not substantive. Id. at 1353. The Court held that such an error was technical and non-jurisdictional. Id. at 1354 (citing Stewart v. State, 377 So.2d 1067 (Miss.1979); Jones v. State, 356 So.2d 1182 (Miss.1978)). "[The indictment was] signed by the foreman of the grand jury and marked filed by the circuit clerk of Lowndes County. This provided sufficient `legal evidence....'" Brooks, 573 So.2d at 1354.
¶ 8. The indictment in the present case, like that of Brooks, was signed by the foreman of the grand jury, clearly designated as "State of Mississippi, Jones County," and marked filed by the Circuit Clerk of Jones County. There was no error in allowing the State to amend the indictment to show Jones County on the face of the instrument when Jones County was on the page containing the grand jury foremen's signature and was marked "filed" by the Circuit Clerk of Jones County. Moss had sufficient notice that he was being brought to trial in Jones County and suffered no prejudice because of the amendment to the indictment.

II.

THE AMENDED MURDER INDICTMENT IS WHOLLY VOID FOR NOT INCLUDING THE NECESSARY LANGUAGE "DID."
¶ 9. Moss argues that when the district attorney's office amended the indictment to add "Jones County," the word "did" before "kill and murder" was omitted. He states that the amended indictment is wholly void because it omitted the word "did."
¶ 10. Moss cites the case of Kelly v. State, 204 Miss. 79, 36 So.2d 925 (Miss.1948), where the Court considered an indictment worded as the one in this case and ruled that the indictment was void. The State counters that although Kelly has not been expressly overruled, it is among the cases decided before the adoption of Uniform Criminal and Circuit Court Rules. The Mississippi Supreme Court has stated before that pre-rule cases were decided in an era when indictments were scrutinized more strictly than they are today because of the new rules. Harden v. State, 465 So.2d 321, 324 (Miss. 1985). Uniform Circuit and County Court Rule 7.06 states:
The indictment upon which the defendant is to be tried shall be a plain, concise and definite written statement of the essential facts constituting offense charges and shall fully notify the defendant of the nature and cause of the accusation against him. Formal or technical words are not necessary in an indictment, if the offense can be substantially described without them.
Id. See also Hennington v. State, 702 So.2d 403, 408 (Miss.1997) (citing Rule 7.06 finding that formal words are not necessary, if the *724 offense is sufficiently described without them).
¶ 11. In Harbin v. State, 478 So.2d 796 (Miss.1985), the Court upheld a conviction under an indictment for aggravated assault that did not include the words "under circumstances manifesting extreme indifference to the value of human life." Harbin claimed that the indictment fell short of effecting a viable charge. Id. at 798. The Court disagreed and stated, "[w]hatever may have been the law in former days, our starting point today for consideration of a question such as this is Rule 2.05, Uniform Criminal Rules of Circuit Court Practice [now Rule 7.06 URCCC]." Id.
¶ 12. We note that the original indictment, as handed down by the grand jury, said that Charles "did ... kill and murder one Sabrina Moss...." Thus, Charles cannot claim that he was unduly surprised by the oversight or that his trial was in any way affected by this omission.
¶ 13. We find that following post-rule precedent, the omission of the word "did" was merely a formal or technical word which was not necessary in an indictment because the offense was substantially described without that word. Moss does not make a showing that the omission in the amended indictment in any way prejudiced him. There is no merit to Moss's second assignment of error.

III.

THE TRIAL COURT ERRONEOUSLY ALLOWED THE ADMISSION AND PREJUDICIAL USE BY THE PROSECUTOR OF EVIDENCE OF OTHER BAD ACTS, MISCONDUCT, AND CRIMES, WHOSE PREJUDICIAL EFFECT OUTWEIGHED ANY PROBATIVE VALUE. FURTHER, THE TRIAL COURT ERRED IN NOT GIVING, SUA SPONTE, A LIMITING INSTRUCTION ON THE MRE 404(B) EVIDENCE.
¶ 14. During trial, the State offered evidence of prior bad acts committed by Moss claiming that each was admissible to prove intent and motive under Mississippi Rule of Evidence 404(b). There were three such instances where the State introduced evidence of other bad acts on direct examination of witnesses over a timely objection by the defense. Moss argues that each act was erroneously admitted and requires reversal.
¶ 15. The first such exchange was on direct examination of Douglas Blakeney, the father of Sabrina. The prosecutor asked Blakeney about a conversation he had with Moss after Sabrina had left him and returned to her father's home. The question was, "Would you tell the Court and the jury what that conversation was?" After Blakeney related the conversation, he added, "and about that time he plowed into me with his fists. He started hitting me and he" The prosecutor tried to get Blakeney's testimony back on the subject and he said, "The conversation" Blakeney answered, "The conversation, while he was hitting me" The defense objected. The prosecution then asked Blakeney, "Just the conversation of what Charlie told you that night." Blakeney replied, "He told me, I'm going to kill that bitch."
¶ 16. The next occurrence was on direct examination of Charles Landrum, who is a security officer at South Central Regional Medical Center. The prosecution asked Landrum what the contents were of a conversation he had with Sabrina while she was at the hospital. He stated, "she told us that her husband wouldn't let her have her baby, that she wanted to leave him and he wouldn't let her have her baby." The prosecution then asked, "Is that all that was said?" Landrum said, "Well, sir, she told me that he hadsaid he had beat her the night before." The defense objected and the trial court overruled the objection. Landrum then stated, "She told me that he had beat her the night before and she wanted to leave him,... that he was abusing her."
¶ 17. The last admission of prior bad acts occurred on direct examination of Ouida Floyd, who is employed by the Justice Court of Jones County. The prosecutor asked Floyd about an affidavit filed by Sabrina, on January 30, 1996, alleging simple assault charges against Moss. Floyd stated, "so I asked her what had happened and she told me that he had threatened her and that she wanted to make charges, and that she also *725 wanted to go out there ... to get some clothes." The defense objected to this line of questioning, and the trial court overruled the objection.
¶ 18. The admissibility of evidence related to prior bad acts is well-established in Mississippi. Mississippi Rule of Evidence 404 provides that evidence of a person's character or a trait of his character is generally not admissible. The rule does, however, designate certain exceptions. Under this rule, evidence of other crimes, wrongs, or acts is admissible to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
¶ 19. The testimony assigned as error here was not introduced to prove the character of Moss, but to show the escalating level of violence, culminating in the crime of the murder. This was evidence of a continuing pattern of violence against the victim which resulted in her death, going towards Moss's motive and intent.
¶ 20. Moss argues that even if the evidence were admissible under Rule 404(b), the second part of the test for admission of bad acts was not met and reversible error occurred. This second part is a determination by the trial court whether the probative value of the testimony outweighs its prejudicial effect under Mississippi Rule of Evidence 403.
To be sure, evidence admissible under Rule 404(b) is also subject to the prejudice test of Rule 403; that is, even though the Circuit Court considered the evidence at issue admissible under Rule 404(b), it was still required by Rule 403 to consider whether its probative value on the issues of motive, opportunity and intent was substantially outweighed by the danger of unfair prejudice. In this sense Rule 403 is an ultimate filter through which all otherwise admissible evidence must pass.

Watts v. State, 635 So.2d 1364, 1368 (Miss. 1994) (quoting Jenkins v. State, 507 So.2d 89, 93 (Miss.1987)).
¶ 21. Moss's defense was that this killing was an unplanned crime of passion. The prior bad acts contradicted this defense by showing that he had threatened to kill Sabrina the week before her killing and that Moss had attacked her before, showing that the homicide was not a spontaneous act done in the heat of passion. Its probative value on the issue of his continuing and increasing level of violence against Sabrina and his motive for her murder outweighed the possible prejudice.
¶ 22. Moss complains that the trial court did not go through a balancing of the probative value versus the prejudicial value of the inclusion of the prior bad act evidence. Although the judge did not specifically mention Mississippi Rule of Evidence 403, the record reveals that he did weigh these factors before deciding to admit bad act evidence. The judge stated that the previous bad acts were more probative than prejudicial because they tended to prove premeditation.
¶ 23. Last, Moss argues that the trial court failed to properly instruct the jury as to the limited purpose for which they were allowed to consider the other bad act evidence. See Smith v. State, 656 So.2d 95, 99 (Miss.1995). Moss is correct; no limiting instruction was sought nor did the judge give an instruction sua sponte. Although Smith held it reversible error for the court not to give a limiting instruction sua sponte, neither Smith or any other case on point that had this type of error held that this oversight is not subject to a harmless error analysis.
¶ 24. We find that the error was harmless. The State presented the evidence of Moss's mother, who was present in the home before the killing and actually witnessed the shooting. Moss's mother testified that she overheard Sabrina ask Charles where the baby bottles were, but stated that she kept opening the bedroom door because she did not want any trouble. This clearly shows that "trouble" had not started before the killing took place. Latina Moss, Charles Moss's sister-in-law, was in the home at the time of the killing. She was in a bedroom adjacent to where Charles shot Sabrina. She testified that she did not hear anything before the shooting, except a bump against the closet door, again contradicting Moss's claim that this killing took place in the heat of an argument. Moss, on the other hand, presented no evidence to dispute the State's case that the killing was premeditated. We hold *726 the error, if any under Smith, by the trial court to be harmless in view of the overwhelming weight of the evidence against Moss.

IV.

IT WAS ERROR FOR THE PROSECUTOR IN FINAL SUMMATION TO ARGUE TO THE JURY THAT MANSLAUGHTER WAS NOT AN EXCUSE UNDER MISSISSIPPI LAW.
¶ 25. Moss argues that during closing argument the district attorney erroneously instructed the jury on the law of Mississippi. The State counters that the district attorney was merely answering the argument posed by the defense. During his closing the defense stated, "because the law does recognize manslaughter.... It does recognize that couples ... can get into arguments, marriages can go sour and tragedy can occur. It doesn't condone it. It's not the first time and, regrettable, in life's experience it will not be the last time this happens. But the law does recognize it." The district attorney countered in her closing that "he was upset. But there are many things in life that we get upset about, but the law doesn't say that it's all right to go out and make it right just because you don't like it. That's not what the law is in the State of Mississippi."
¶ 26. The Mississippi Supreme Court has repeatedly held that the trial judge "is in the best position for determining the prejudicial effect of an objectionable comment." Alexander v. State, 602 So.2d 1180, 1182 (Miss.1992). Thus, the trial court is given discretion to determine whether or not an improper statement made during closing argument should result in a mistrial. Id. Moreover, the test which we must follow for determining if an improper argument by a prosecutor to a jury requires reversal is: "[W]hether the natural and probable effect of the improper argument of the prosecuting attorney is to create an unjust prejudice against the accused as to result in a decision influenced by the prejudice so created." Davis v. State, 660 So.2d 1228, 1248 (Miss. 1995).
¶ 27. Furthermore, it is noteworthy that when Moss objected to the district attorney's allegedly improper remark, there was no request for the trial court to admonish the jury to disregard her statement. Where an objection is sustained and "no request is made that the jury be told to disregard the objectionable matter, there is no error." Marks v. State, 532 So.2d 976, 981 (Miss. 1988). A conviction will not be reversed due to an improper remark during closing argument unless this Court is convinced that the remark influenced the jury and contributed to the verdict. In the present case, we are not convinced that the comment by the district attorney served to prejudice the jury and influence the verdict. We hold this issue is without merit.

V.

IT WAS PLAIN ERROR FOR THE PROSECUTOR TO EGREGIOUSLY COMMENT ON THE DEFENDANT'S RIGHT NOT TO TESTIFY.
¶ 28. Moss complains that the prosecution unfairly commented on his right not to testify. During his closing argument counsel for the defense stated:
it is obvious that they had to be in some kind of argument. Maybe it wasn't a hollering and screaming match, ... but you've just got to believe that something was going on back there.... There is no evidence that Charlie Moss had a cooldown period to deliberate on his acts. We don't know what was being said in that room.
In answer to this argument, the district attorney stated:
Was there an argument that day? There is absolutely no testimony that has been given yesterday and today that says or indicates that there was any kind of argument. They obviously were talking... but you think back through it.... There is not a witness who has brought you any evidence that this thing escalated in any sort of fuss, in any sort of a confrontation at all.... She went over there to get the baby's stuff.
*727 ¶ 29. The United States Constitution and the Mississippi Constitution provide that no person may be compelled to take the witness stand against himself. See U.S. CONST. amend. V; MISS. CONST. art. 3, § 26. "Balanced against this [constitutional] interest, however, is the rule that attorneys are given wide latitude in making their closing arguments. Thus, although a direct reference to the defendant's failure to testify is strictly prohibited, all other statements must necessarily be looked at on a case by case basis." Jones v. State, 669 So.2d 1383, 1390 (Miss.1995) (quoting Jimpson v. State, 532 So.2d 985, 991 (Miss.1988)).
¶ 30. "In order to protect this right, prosecutors are prohibited from making direct comments on the defendant's failure to testify; they are also precluded from referring to the defendant's failure to testify `by innuendo and insinuation.'" Jones, 669 So.2d at 1390 (quoting Wilson v. State, 433 So.2d 1142, 1146 (Miss.1983)). The question is whether the comment of the prosecutor can reasonably be construed as a comment on the defendant's failure to take the stand. Taylor v. State, 672 So.2d 1246, 1265 (Miss. 1996).
¶ 31. The Mississippi Supreme Court has stated before that it is not error to comment on the defense's failure to offer an available witness to counter or explain the State's evidence. Lee v. State, 435 So.2d 674, 678 (Miss.1983); Conway v. State, 397 So.2d 1095, 1099 (Miss.1980). It is also not error to comment regarding the paucity of evidence before the jury to support the defendant's defense. Dowbak v. State, 666 So.2d 1377, 1386 (Miss.1996); Shook v. State, 552 So.2d 841, 851 (Miss.1989).
¶ 32. The comments made by the prosecutor were not statements on Moss's failure to take the stand and testify in his own behalf. We hold that the above comments were on the defense's failure to offer an available witness to counter or explain the State's evidence or comments regarding the lack of evidence before the jury to support the defendant's defense. Moss's last assignment of error has no merit.
THE JUDGMENT OF THE JONES COUNTY CIRCUIT COURT OF CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO JONES COUNTY.
BRIDGES, C.J., McMILLIN, P.J., and COLEMAN, DIAZ, HERRING, HINKEBEIN, KING, PAYNE and SOUTHWICK, JJ., concur.