736 So.2d 464 (1999)
Frederick Earl BRADFORD a/k/a Frederick Bradford, Appellant,
v.
STATE of Mississippi, Appellee.
No. 96-KA-01416COA.
Court of Appeals of Mississippi.
March 23, 1999.
Marie Wilson, Greenville, Attorney for Appellant.
Office of the Attorney General by Pat Flynn, Attorney for Appellee.
En Banc.

ON MOTION FOR REHEARING
McMILLIN, C.J., for the Court:
¶ 1. The motion for rehearing filed by the State of Mississippi is denied. The original opinion issued in this case is withdrawn and the following opinion is substituted as the opinion of the Court.
¶ 2. Frederick Bradford has appealed his conviction on two counts of gratification of lust. We find that the State's evidence was insufficient as a matter of law to sustain the conviction and we reverse and render.

I.

Facts
¶ 3. Bradford was a long-time friend of Temeica Hayes and her family and was a frequent guest in the home. Hayes had five children. Four of those children played some part in the facts of this case. They were eleven, ten, three, and two years old at the time of the events that led to this prosecution. The remaining child was one year old at the time and does not figure in the case. The three-year-old and two-year-old were both female children. In the summer of 1995, Bradford accompanied Hayes, her boyfriend, and all five children on an automobile excursion into Greenville. When they arrived at their destination, Hayes and her boyfriend exited the vehicle, leaving Bradford alone in the car with the children. When Hayes and her friend returned to the car about *465 twenty minutes later, the two older children attempted to convey a message to their mother that something had occurred during her absence. After they had arrived home, Hayes took one of these older children for a walk. During that walk, the child apparently related that Bradford had been behaving inappropriately with her three year old and two year old sisters in the car. Hayes subsequently returned home and discovered the three year old to be crying. When the child was asked the reason for her distress, she reported that Bradford had inserted his tongue in her mouth and had fondled her in the area of her vagina. The two older children's version of events they had observed in the car did not, however, correspond with the incident related by the younger child. Rather, they related a sequence of events where Bradford would, when the two younger girls were looking away, pinch one of them on the buttocks. When the child would turn to confront him, Bradford would playfully suggest that one of the other children was the culprit. The eleven year old also reported seeing Bradford kiss both the younger girls on the jaw, though the other older child did not corroborate this testimony. The ten year old child testified that she only saw these acts of pinching committed on one of her younger sisters.
¶ 4. Bradford was subsequently indicted on three counts. One was for sexual battery, growing out of the allegations of vaginal fondling, and the remaining two counts for gratification of lust arose out of the episodes of pinching and kissing that occurred in the car. The State's proof on the gratification of lust counts consisted principally of the testimony of the ten and eleven year old children relating what they saw in the car. The proof on the sexual battery count consisted entirely of Hayes's testimony concerning what the three-yearold had told her. The defense presented no evidence.
¶ 5. The case was submitted to the jury and the jury acquitted Bradford on the sexual battery count, but convicted him on the two counts of gratification of lust.

II.

Discussion
¶ 6. In reviewing a challenge to the sufficiency of the evidence, this Court is obligated to view the evidence in the light most favorable to sustaining the conviction. McClain v. State, 625 So.2d 774, 778 (Miss. 1993). We are authorized to set aside a jury's verdict only if we are convinced that, as to one of the essential elements of the crime, the State's proof was so deficient that a reasonable and fair-minded juror could only find the defendant not guilty. Id.
¶ 7. The statute under which Bradford was charged states that "[a]ny person ... who, for the purpose of gratifying his or her lust, or indulging his or her depraved licentious sexual desires, shall handle, touch or rub ... any child ... shall be guilty of a high crime...." Miss.Code Ann. § 97-5-23 (Rev.1994). In this case, there is no legitimate dispute that Bradford was pinching and kissing two young girls of very tender years. Thus, the sole legitimate disputed issue of fact was whether the State presented sufficient proof to support a finding by the jury that Bradford's actions were "for the purpose of gratifying his ... lust." Miss.Code Ann. § 97-5-23 (Rev.1994).
¶ 8. We find no case law that is particularly helpful in determining what evidence is necessary to give rise to an inference that an undisputed act of touching was for the purpose of satisfying the defendant's depraved sexual desires. Nevertheless, we are of the opinion that there must be evidence of some nature that is probative on the issue; otherwise, every demonstration of affection or playful act directed by an adult toward a child would expose the adult to potential criminal charges, the outcome of which would depend solely on the jury's unsubstantiated subjective assessment of the purposes of the encounter.
*466 ¶ 9. Certainly, such evidence could arise from a description of the circumstances of the encounter itself. For example, touching in inappropriate parts of the child's body, overly demonstrative acts of affection, events occurring when the child is not fully clothed, or some evidence of sexual arousal by the defendant during the encounter, might be sufficient to permit the jury to draw a reasonable inference as to the improper purpose of the defendant's act. We do not intend, by the foregoing, to exhaust the possibilities of the avenues of proof available to the State. We only mean to demonstrate that a jury's determination of the motivation underlying a defendant's actions in regard to physical contact with children must be based upon something other than pure conjecture.
¶ 10. In this case, the only evidence of Bradford's activities consisted of testimony that, in a car crowded with children, Bradford was engaged in a game involving contact of only the briefest duration consisting of a pinch that was followed by a laughing attempt to place the blame for the contact on one of the other children. There is no evidence of any attempt to grope or rub either of the children in a sexually suggestive manner. There is no evidence that Bradford was unnaturally aroused or sexually excited by this seemingly prankish behavior. We can, after a thorough review of the record, discover no evidence that would suggest that Bradford's behavior on this particular afternoon was the kind of deviant behavior toward a child that the statute on gratification of lust was intended to punish.
¶ 11. The State seeks to bolster the case for affirming by suggesting that the jury could have considered the mother's testimony about the alleged incident related by the younger daughteralthough it involved a separate incidentas tending to show a more sinister purpose in Bradford's behavior in the car than would be apparent on the face of it. The State argues that Rule 404(b), dealing with the general impropriety of using proof of other bad acts to show the defendant's character as one likely to commit the crime, has no application in this circumstance since evidence of similar conduct with the same victim in cases involving sexual abuse has been found admissible on the issue of the intent of the defendant.
¶ 12. The State also urges that the incident in the car and the other incident testified to by the mother were nothing more than a continuation of the same event. They do so by arguing that Bradford "apparently continued" his inappropriate behavior in the house while the mother was out talking to the older daughter. There is insufficient evidence in the record to support an inference that the incident involving penetration occurred at the time the State suggests. When asked, the mother indicated that she had no idea as to when this other incident might have occurred, and the ten and eleven year old children never claimed to have witnessed any such activity. Thus, there can be no claim that these alleged activities constituted a single event, thereby making the mother's testimony relevant on the remaining counts under the decision in Lesley v. State, 606 So.2d 1084 (Miss.1992). In all events, the State advances this argument solely to demonstrate the admissibility of this other evidence. We do not, by our decision, find the evidence inadmissible. It certainly was admissible on the issue of Bradford's guilt on the first count. We simply disagree that this evidence, admissible for that purpose, could, on the state of this record, be considered for another essentially unrelated purposeto prove Bradford's motives for his behavior in the car. M.R.E. 105.
¶ 13. There are significant additional problems in relying on the State's argument to affirm Bradford's conviction in this case. Principal among them is the proposition that the jury acquitted Bradford on the count that was founded on the mother's testimony, thereby casting significant doubt on the jury's willingness to conclude that this event occurred. Secondly, *467 the jury was not instructed on the notion that it could consider evidence of Bradford's conduct on the separate sexual battery charge to divine his underlying motivation to engage in what, on its face, appeared to be mere horseplay. In combination, we find these two problems fatal to the State's argument.
¶ 14. Had the prosecution truly intended for the jury to consider this evidence for two distinct purposes, i.e., on the question of guilt as to the sexual battery count and also on the question of the motive behind his behavior on the remaining two counts of fondling, we are of the opinion that a jury instruction to that effect was absolutely essential. The necessity for an instruction when Rule 404(b) evidence is admitted, informing the jury of the limited purpose for which the evidence may be considered, has been plain in this State since the Mississippi Supreme Court decision in Smith v. State, 656 So.2d 95 (Miss. 1995). In that case, the supreme court said that such a limiting instruction must be given if Rule 404(b) evidence is to be introduced on the question of guilt, even if one is not requested by the defense. Id. at 100. The only exception countenanced in Smith is if the defense, being confronted with such a proposed instruction, affirmatively rejects it. Id.
¶ 15. In this case, there was no Rule 404(b) instruction regarding the possibility that evidence bearing on one charge might serendipitously prove helpful to the jury in resolving another charge. To the contrary, the trial court only instructed the jury that it had to resolve the three counts separately without any indication that any evidence introduced might have the kind of crossover utility the State urges.
¶ 16. We are not convinced that this jury was so sophisticated in the nuances of the rules of evidence that its members understood that, although they had concluded that the State failed to prove Bradford's guilt on the first count beyond a reasonable doubt, they might nevertheless determine that the facts of that charge had been proven by a preponderance of the evidence and, on the strength of that finding, they might use evidence relating to that incident to discover an evil motive in Bradford's conduct in the car that was not otherwise apparent in the proof.
¶ 17. Discounting, as we conclude we must, the mother's testimony on this separate crime, we conclude that the remaining evidence of Bradford's actions in engaging in horseplay with these children on the afternoon in question is not sufficient to support a finding that he was involved, in some way, in satisfying his unnatural sexual appetites. Because we find the evidence on this critical element of the crime insufficient as a matter of law, we are constrained to reverse and render Bradford's conviction on both counts.
¶ 18. THE JUDGMENT OF THE CIRCUIT COURT OF WASHINGTON COUNTY IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO WASHINGTON COUNTY.
KING AND SOUTHWICK, P.JJ., BRIDGES, COLEMAN, AND THOMAS, JJ., CONCUR.
PAYNE, J., DISSENTS WITH WRITTEN OPINION JOINED BY DIAZ, J.
IRVING AND LEE, JJ., NOT PARTICIPATING.
PAYNE, J., DISSENTING:
¶ 19. My disagreement with the majority's disposition of this case continues aside from the discussion of the admissibility of evidence of prior bad acts under M.R.E. 404(b) and M.R.E. 105. Based on my review of the record, I believe that there was sufficient evidence for the jury to have convicted Bradford of these charges, and the M.R.E. 803(25) testimony of the mother was appropriately allowed into evidence on all three counts. Accordingly, I respectfully dissent.
*468 ¶ 20. We rarely find occasion to reverse and render a jury verdict on a sufficiency question, as the majority has done here. I feel we must review with special care convictions of this nature based on sufficiency of the evidence challenges. As the Mississippi Supreme Court has noted in a previous case involving gratification of lust:
It is pertinent to observe that questions involved in cases of this character[gratification of lust] are peculiarly problems for local jurors. That is especially true in this case, where the accused and all of the witnesses, as well as the jurors, resided in the same county where the trial was being had. The jurors were selected from the body of the county. Very likely some of them, at least, were friends and acquaintances of Maddox and of the witnesses. It is not an easy matter to convict a fellow resident, sixtyone years of age of the crime of fondling a child ten years of age with sexual or licentious intent. The jurors personally observed the witnesses while they were testifying, including Maddox himself. The jurors were in much better position to pass upon the credibility of the witnesses and the accuracy of their testimony, and draw the correct meaning from the evidence, than are the members of this Court. We think the guilt or innocence of Maddox was a question for the jury.

Maddox v. State, 230 Miss. 529, 532, 93 So.2d 649, 650 (Miss.1957) (emphasis added).
I think this is very instructive and compels us to be extra cautious in taking cases involving the sexual abuse of our youngsters from a jury.
¶ 21. First, the majority discounts the testimony of the mother in this case with regard to the two incidents of gratification of lust. The majority believes that since Bradford was acquitted on the sexual battery count that the testimony of the mother therefore becomes irrelevant with regard to the gratification of lust counts. This rationale, I believe, is flawed. Regardless of the fact that Bradford was acquitted on the sexual battery count, the mother's testimony was still presented to the jury and was available for them to consider in making their decision with regard to each count in this case. I believe the evidence presented by the mother was probative of Bradford's actions with regard to the gratification of lust counts. Obviously, the jury weighed all of the evidence and determined that, in toto, there was sufficient evidence to convict Bradford on the gratification of lust counts. The majority correctly notes the well-settled legal principle that the credibility of and proper weight to be afforded to evidence is a determination for the jury. Collier v. State, 711 So.2d 458 (¶ 18) (Miss.1998). Yet, the majority has chosen to take this case from the jury and reverse these convictions. The jury could very well have inferred a perverted purpose in these acts of pinching and kissing the children by Bradford, in the context of the mother's testimony, sufficient to convict Bradford of gratification of lust and, for whatever reason, find the evidence insufficient to convict on the sexual battery count. With the utmost respect to the majority, their disregard of the testimony of the mother with regard to the gratification of lust counts is incorrect.
¶ 22. The evidence against Bradford on the gratification of lust counts, in my view and in the eyes of the jury, was quite disturbing as well as compelling. First, the two siblings witnessed the acts of pinching and kissing by Bradford directed at both Mary and Jane,[1] and both siblings testified that they believed what Bradford did that day in the car to Mary and Jane was wrong. While children, in this case ages ten and eleven, are not well-versed in sexual vocabulary, they are very aware and innately know when something is done to another child by an adult that is wrong and improper. Accordingly, their inability *469 to properly verbalize this wrongful conduct when reporting it should not make their reports any less credible. In this case, Bradford's conduct was serious enough in the eyes of the siblings that they felt compelled that same day to whisper the activity to the mother instead of simply telling her in earshot of Bradford.
¶ 23. Further, the female sibling who witnessed Bradford's acts testified about her attempt to intervene and keep Bradford from pinching the younger children, only to have her hand pushed away by Bradford, and the male sibling who witnessed Bradford's acts testified that Bradford told him that he would regret telling on Bradford. As the Maddox Court pointed out, the jury was in the best position to assess the credibility of these child witnesses and whether or not they actually believed that Bradford's actions to the younger girls was, indeed, wrong.
¶ 24. Second, the victims's mother testified that one of the victims, "Mary," related to her the perverted actions of Bradford toward her:
Prosecutor: Did you see anything unusual about one of your daughters?
Mother: Yes.
Prosecutor: Which daughter?
Mother: "Mary".
Prosecutor: And "Mary" was how old at that time?
Mother: Three.
Prosecutor: Okay. What did you observe her doing?
Mother: She was crying.
________
Prosecutor: When you noticed she was crying, what did you do?
Mother: I started asking her questions.
Prosecutor: Okay. How did you go about doing that?
Mother: I asked her did she hurt herself or could she tell me what happened?
Prosecutor: And what did she tell you?
Mother: She got in my lap.
Defense Attorney: Objection, your Honor, for the record.[2]
The Court: That will be overruled.
Mother: She got in my lap, and she explained to me what had happened to her.
Prosecutor: And what did she tell you happened to her?
Mother: She told me that the Defendant was putting his tongue in her mouth and was sticking his finger in her piss.
Prosecutor: And what is that?
Mother: Her vagina.
Prosecutor: As best you can remember, did she say "He put his tongue in my mouth," or how did she go about telling you what he had done?
Mother: I asked her to show me what she was talking about.
Prosecutor: And what did she say to you?
Mother: Shewhen she was telling me, she was showing me at the same time.
Undoubtedly, french-kissing and molesting a baby is, at the very least, gratification of lust as defined by our criminal code. This is not to suggest that gratification of lust is a lesser-included-offense of sexual battery. However, Rule 404(b) of our rules of evidence permits testimony of other wrongs committed by a defendant to the same victim to demonstrate motive, intent, opportunity, and the like. Eakes v. State, 665 So.2d 852, 861 (Miss.1995). The testimony of the mother in this case undoubtedly was admissible under M.R.E. 404(b) to demonstrate Bradford's motive and intent in pinching and kissing the girls in the car. By departmentalizing the mother's testimony and applying it only to the sexual battery count, it seems to me that the majority effectively destroys, or at the very least extremely weakens, without saying *470 so, the tender years exception to the hearsay rule.
¶ 25. The majority also relies on M.R.E. 105 as a basis for its decision in this matter. Rule 105 provides as follows:
When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly.
First, a plain reading of Rule 105 makes the limiting instruction necessary only if requested by the defendant. However, two decisions by the Mississippi Supreme Court have held that where Rule 404(b) evidence is admitted, under Rule 105, the trial court must, sua sponte, issue a limiting instruction to the jury even if it is not requested. Bounds v. State, 688 So.2d 1362, 1371 (Miss.1997) (citing Smith v. State, 656 So.2d 95, 100 (Miss.1995)). Nonetheless, neither Rule 105 on its face nor Smith or Bounds remove the issue of the lack of a limiting instruction from the realm of harmless error analysis. It is in this context that this Court has distinguished Smith and Bounds in two recent unanimous opinions, and why I believe that the rigid application of Smith suggested by the majority is inappropriate.
¶ 26. First, in Moss v. State, 727 So.2d 720, 1998 WL 420683 (Miss.Ct.App.1998) (cert.denied), this Court found harmless error in the trial court's failure to give a limiting instruction under Rule 105. Moss concerned a murder conviction where the defendant killed his wife, and the trial court allowed in evidence of prior domestic violence. Moss raised Smith and the lack of a limiting instruction; however, we held:
Last, Moss argues that the trial court failed to properly instruct the jury as to the limited purpose for which they were allowed to consider the other bad act evidence. See Smith v. State, 656 So.2d 95, 99 (Miss.1995). Moss is correct; no limiting instruction was sought nor did the judge give an instruction sua sponte. Although Smith held it reversible error for the court not to give a limiting instruction sua sponte, neither Smith or any other case on point that had this type of error held that this oversight is not subject to a harmless error analysis.... We hold the error, if any under Smith, by the trial court to be harmless in view of the overwhelming weight of the evidence against Moss.
Moss, 1998 WL 420683 at *5, 727 So.2d at 725.
¶ 27. Two months following our decision in Moss, we decided Givens v. State, 730 So.2d 81 (Miss.Ct.App.1998), and again, recognizing Bounds and Smith, applied the harmless error analysis in detail to the lack of a Rule 105 instruction. Givens was a child fondling case. I quote from our holding that the lack of a limiting instruction constituted harmless error:
However, we find this error to be harmless. In Catholic Diocese of Natchez-Jackson v. Jaquith, 224 So.2d 216, 221 (Miss.1969), the supreme court discussed the distinction between harmless and reversible error as follows: To warrant reversal, two elements must be shown: error, and injury to the party appealing. Error is harmless when it is trivial, formal, or merely academic, and not prejudicial to the substantial rights of the party assigning it, and where it in no way affects the final outcome of the case; it is prejudicial, and ground for reversal, only when it affects the final result of the case and works adversely to a substantial right of the party assigning it. Obviously, in order for the rule of harmless error to be called into play in support of a judgment, the judgment must be otherwise supportable, and will be reversed when there is nothing in the pleadings or evidence to support it .... (quoting 5 AM.JUR.2D APPEAL AND ERROR § 776 (1962)). Later, the supreme court related a more stringent concept of "harmless error" Forrest v. State, 335 So.2d 900, 903 (Miss.1976), when it opined, "[a]n error is harmless *471 only when it is apparent on the face of the record that a fair minded jury could have arrived at no verdict other than that of guilty." (citations omitted).
Id. at *10, 730 So.2d at 90.
We, as a unanimous court, have also decided a case as well consistent with Smith and requiring a limiting instruction; however, that case was factually similar to Smith involving drug crimes. See Burrell v. State, 727 So.2d 761 (Miss.Ct.App.1998). However, in Burrell, we did not in any way foreclose the application of harmless error analysis to these questions; rather, we simply did not conduct such analysis. As I support the proposition of applying harmless error analysis to such situations, I would do so in the case sub judice and find the overwhelming weight of the evidence against Bradford was such that "on the face of the record that a fair minded jury could have arrived at no verdict other than that of guilty." Forrest, 335 So.2d at 903 (Miss.1976) (citations omitted).
¶ 28. This important and pivotal evidentiary issue aside, I, too, am disturbed by the majority's discussion regarding the lack of proof as to the sexual suggestiveness of Bradford's actions while in the car with the children. As I noted above, children the ages of the witnesses in this case simply do not have the intellectual maturity, and hopefully not the practical experience, to recognize the perverted suggestiveness of specific acts. However, they do know when an act is wrong. It seems to me that the jury could have taken the testimony of the children regarding the pinching and kissing, coupled with that of the mother's conversation with Mary that same day, and reached the conclusion that Bradford was gratifying his lust with the young girls.
¶ 29. Additionally, I take exception with the majority's characterization of these acts as amounting to "horseplay." Quite the contrary, at least in the eyes of the jurors, the fact-finders, in this case who found that Bradford's behavior was not simply innocuous and that it was much more serious than horseplay. Given the totality of the evidence presented in this case, the dismissal of Bradford's actions as horseplay by the majority greatly distresses me. As the majority correctly points out, the case law with regard to this statute is less than helpful. However, considering all the surrounding circumstances and the totality of the evidence presented at trial plus the Mississippi Supreme Court's clear concerns in Maddox about substituting our views for those of a jury in the community where the crimes occurred, I believe that there was sufficient evidence to sustain Bradford's conviction in this case.
¶ 30. Lastly, I respectfully disagree with the majority that by allowing this conviction to stand, we would open the door to "every demonstration of affection or playful act directed by an adult toward a child would expose the adult the potential charges, the outcome of which would depend solely on the jury's unsubstantiated subjective assessment of the purposes of the encounter." I am very confident that our prosecutors are restrained enough not to seek an indictment in every case where an act of affection is displayed toward a child by an adult.
¶ 31. For the foregoing reasons, I respectfully dissent.
DIAZ, J., JOINS THIS SEPARATE WRITTEN OPINION.
NOTES
[1] To protect the child victims, I will refer to them as "Mary" and "Jane."
[2] Prior to this testimony, the trial judge conducted a hearing under M.R.E. 803(25) and M.R.E. 804 and determined that what "Mary" told her mother was admissible under the tender years exception to the hearsay rule and that "Mary" was unavailable as a witness.