982 So.2d 453 (2007)
L.D. FOXWORTH, Appellant
v.
STATE of Mississippi, Appellee.
No. 2006-KA-01640-COA.
Court of Appeals of Mississippi.
November 6, 2007.
Rehearing Denied March 11, 2008.
*454 William Joseph Barnett, attorney for appellant.
Office of the Attorney General by Ladonna C. Holland, attorney for appellee.
Before MYERS, P.J., BARNES and ROBERTS, JJ.

SUMMARY OF THE CASE
ROBERTS, J., for the Court.
¶ 1. On August 30, 2006, a jury sitting before the Marion County Circuit Court found L.D. Foxworth guilty of one count of child molestation. The circuit court sentenced Foxworth to fifteen years in the custody of the Mississippi Department of *455 Corrections. Foxworth filed unsuccessful post-trial motions for a judgment notwithstanding the verdict or, alternatively, for a new trial. Aggrieved, Foxworth appeals and raises three issues:
I. THE CIRCUIT COURT ERRED WHEN IT OVERRULED HIS MOTION FOR JNOV OR, ALTERNATIVELY, FOR A NEW TRIAL BECAUSE THE VERDICT IS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
II. THE CIRCUIT COURT ERRED WHEN IT NEGLECTED TO CONDUCT A POST-TRIAL HEARING BASED UPON THE AFFIDAVIT AND SWORN TESTIMONY OF A JUROR THAT THE JURY WAS PRESSURED TO DELIVER A GUILTY VERDICT AND THAT A JUROR DID NOT DISCLOSE THAT SHE HAD BEEN MOLESTED AS A CHILD.
III. THE STATE FAILED TO PROVE AN ESSENTIAL ELEMENT IN THE INDICTMENT IN THAT THE STATE FAILED TO PROVE THAT FOXWORTH WILLFULLY, UNLAWFULLY, FELONIOUSLY AND KNOWINGLY TOUCHED A CHILD FOR THE PURPOSE OF GRATIFYING HIS LUST OR TO INDULGE HIS DEPRAVED LICENTIOUS SEXUAL DESIRES.
Finding no error, we affirm.

FACTS
¶ 2. Foxworth's conviction stems from his inappropriate contact with a twelve-year-old girl named Tonya.[1] Tonya lived with her mother, Donna. Donna and Tonya lived next door to Donna's cousin, Jane. Foxworth's brother married into Donna and Jane's family. By all accounts, Foxworth regularly visited with Donna and Jane's families, so Tonya and Jane's children were all familiar with Foxworth. In fact, they called him "Uncle L.D."
¶ 3. On March 25, 2003, Tonya got out of school and went next door to Jane's house. As Donna did not get off work until approximately 3:30 p.m., Tonya frequently spent time at Jane's house after school. Tonya and her cousin, Karen, watched television and did their homework in Jane's living room. At some point, Karen left the living room and proceeded to straighten up the kitchen.
¶ 4. Foxworth visited Jane's house that afternoon. When Foxworth arrived, he told Tonya that he wanted to speak to her privately about boys. Foxworth led Tonya into Jane's den and closed the door behind them. Tonya testified that Foxworth had her face away from him and that he placed his hand down through the loose neck of her t-shirt and touched her breast. According to Tonya, with his other hand, Foxworth reached inside her pants and touched her "private part." Tonya attempted to pull away from Foxworth, but he prevented her.
¶ 5. One of Tonya's relatives, James Smith, corroborated Tonya's recollection. At that time, Smith was temporarily living at Jane's house. As Smith passed through the den, he saw Foxworth and Tonya facing away from him. Smith noticed that Foxworth had his hand down Tonya's shirt. It also appears that Smith saw Foxworth's hand down Tonya's pants. To be precise, Smith testified that Foxworth touched Tonya's breast "and, also, went down a little further."
¶ 6. Smith testified that, although he made eye contact with Tonya, he did not intervene or speak out. He testified that he was afraid of Foxworth. According to *456 Smith, he did not want to get involved. He "wanted to stay out of it." Smith went outside, got in his car, and drove away.
¶ 7. Foxworth eventually released Tonya and told her not to tell anyone what happened. According to Tonya, Foxworth gave her two dollars to encourage her silence. Tonya went back to her house and Donna noticed that something was wrong with Tonya. Donna asked Tonya what was wrong. After several attempts, Tonya finally told her mother what happened. Donna testified that Tonya "just bust out screaming that Uncle L.D. tried to rape [her]."
¶ 8. Donna became enraged. She armed herself with a knife and went looking for Foxworth. When she could not find him, she returned home and called the Marion County Sheriff's Department. Investigator Jim Ray responded. Due to Tonya's emotional state, Investigator Ray did not get a statement from Tonya. Instead, Investigator Ray asked Donna to bring Tonya to his office the next day. Donna complied. On the following day, Donna filed formal charges against Foxworth. Foxworth was arrested that same day.

PROCEDURAL HISTORY
¶ 9. The Marion County Grand Jury returned an indictment against Foxworth and charged him with two counts of child molestation in violation of Section 97-5-23(1) of the Mississippi Code Annotated (Rev.2006). Count one charged Foxworth with touching Tonya's breast. Count two charged Foxworth with touching Tonya's vagina. Foxworth pleaded "not guilty" to both counts and the matter proceeded to trial. Foxworth initially went to trial in March of 2006. Because the jury could not reach a unanimous verdict, the circuit court declared a mistrial.
¶ 10. Foxworth went to trial a second time on August 30, 2006. The prosecution called Tonya, Karen, James Smith, Donna, and Investigator Ray. At that point, the prosecution rested. After an unsuccessful motion for a directed verdict, Foxworth did not call any witnesses and rested his case.
¶ 11. The next morning, the circuit court instructed the jury and each side presented its closing argument. The jury deliberated and found Foxworth guilty of count one. The jury could not reach a unanimous verdict on count two, so the circuit court declared a mistrial incident to count two.
¶ 12. On September 8, 2006, the circuit court conducted a sentencing hearing. For count one, the circuit court sentenced Foxworth to fifteen years in the custody of the Mississippi Department of Corrections. The circuit court elaborated and stated, "I'm going to require that you serve 12 years of that sentence in the Mississippi Department of Corrections. If you successfully complete the service of 12 years the remaining three years will be suspended and you'll be placed on postrelease [sic] supervision for three years." Post-trial, Foxworth filed an unsuccessful motion for judgment notwithstanding the verdict or, alternatively, for a new trial. Aggrieved, Foxworth appeals.

ANALYSIS
I. THE CIRCUIT COURT ERRED WHEN IT OVERRULED HIS MOTION FOR JNOV OR, ALTERNATIVELY, FOR A NEW TRIAL BECAUSE THE VERDICT IS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
¶ 13. Foxworth styles his first issue as a challenge to the weight and sufficiency of the evidence. However, based on the substance of his argument, this issue has *457 nothing to do with the weight or the sufficiency of the evidence. To clarify, Foxworth details the appropriate standards of review incident to questions of weight and sufficiency, but then he completely fails to elaborate as to why he considers the evidence insufficient to convict. Likewise, he fails to elaborate as to why the verdict is contrary to the overwhelming weight of the evidence. Instead, Foxworth's entire argument is based on the premise that the circuit court erred when it allowed Donna and Detective Ray to present hearsay testimony as to what Tonya told them. Accordingly, we will not consider whether the evidence was sufficient to convict Foxworth or whether the verdict was contrary to the overwhelming weight of the evidence. That is, our focus is on the substance of Foxworth's argument, rather than the style of the issue.
¶ 14. At trial, Tonya's mother, Donna, testified that Tonya told her that "Uncle L.D. tried to rape me." Foxworth objected at trial, but the circuit court overruled Foxworth's objection. Foxworth appeals and claims the circuit court committed reversible error when it allowed Donna's hearsay testimony.
¶ 15. We review a circuit court's decision to admit testimony under the tender years exception as we review other issues regarding admission of testimonial evidence. "The admission of testimonial evidence is within the sound discretion of the trial court, which will be found in error only if the ruling was an abuse of discretion." Elkins v. State, 918 So.2d 828(¶13) (Miss.Ct.App.2005). As usual, the circuit court must exercise its discretion pursuant to the rules of evidence. Id. Even if we find that the circuit court erred in admitting evidence, we will not reverse the circuit court unless that error affected one of Foxworth's substantial rights. Id.
¶ 16. "`Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." M.R.E. 801(c). "Hearsay is not admissible except as provided by law." M.R.E. 802. There are exceptions to the hearsay rule. Here, the circuit court found Donna's testimony admissible pursuant to M.R.E. 803(25)commonly known as "the tender years" exception to the hearsay rule. According to M.R.E. 803(25):
A statement made by a child of tender years describing any act of sexual contact performed with or on the child by another is admissible in evidence if: (a) the court finds, in a hearing conducted outside the presence of the jury, that the time, content and circumstances of the statement provide substantial indicia of reliability; and (b) the child either (1) testifies at the proceedings; or (2) is unavailable as a witness: provided, that when the child is unavailable as a witness, such a statement may be admitted only if there is corroborative evidence of the act.
Foxworth argues that Donna's testimony was not admissible under the tender years exception because it lacked sufficient indicia of reliability. The official comment to Rule 803(25) of the Mississippi Rules of Evidence list these factors:
(1) whether there is an apparent motive on declarant's part to lie; (2) the general character of the declarant; (3) whether more than one person heard the statements; (4) whether the statements were made spontaneously; (5) the timing of the declarations; (6) the relationship between the declarant and the witness; (7) the possibility of the declarant's faulty recollection is remote; (8) certainty that the statements were made; (9) the credibility of the person testifying about the *458 statements; (10) the age or maturity of the declarant; (11) whether suggestive techniques were used in eliciting the statement; and (12) whether the declarant's age, knowledge, and experience make it unlikely that the declarant fabricated. Corroborating evidence may not be used as an indicia of reliability.
¶ 17. Foxworth raises five sub-arguments in his general assertion that the circuit court erred when it weighed the reliability factors. First, Foxworth discusses factor one: whether Tonya had an apparent motive to lie. According to Foxworth, Tonya had a motive to lie. At trial, Foxworth asserted that he took Tonya down into the den so that he could speak to her about boys. Foxworth attempted to claim that Tonya, then twelve years old, had an older boyfriend or that she had been socializing with older boys. Foxworth suggests that Tonya fabricated the incident to cast doubt on his character because he was going to tell Donna that Tonya had been promiscuous with a boyfriend or boyfriends. However, Foxworth's suggestion is just that and nothing more. The only mention of a boyfriend came from Foxworth's counsel. To be precise, absolutely no witness testified that Tonya had a boyfriend. Tonya repeatedly testified that she did not have a boyfriend and that she had not been seeing older boys.
¶ 18. Foxworth draws our attention to a portion of Karen's testimony and attempts to conclude that Tonya had been seeing older boys. Counsel for Foxworth asked Karen, "Have you known [Tonya] to have boyfriends or to know boys?" Karen responded, "Yeah. Maybe, yeah." Foxworth concludes that Karen's testimony demonstrates that Tonya had a boyfriend or boyfriends. However, that is not unequivocally clear from Karen's testimony. Though we are not bound to consider the evidence as such, even in the light most favorable to Foxworth, Karen only testified that Tonya might have had a boyfriend. Karen clearly qualified her response with a "maybe," indicating that she was not certain. In the light most favorable to the prosecution, Karen simply responded that Tonya "knew boys." That Tonya might have "known boys" does not indicate a motive to lie to her mother. It is not at all unusual for a twelve-year-old girl to know boys. It certainly does not indicate that Tonya had been sexually active with boys or that she lied about Foxworth to cover up his knowledge of that fact. Even the suggestion is a stretch because there is no evidence of such in the record.
¶ 19. Foxworth next suggests that the circuit court improperly weighed factors three and eight-whether more than one person heard Tonya's statement and whether it is certain that Tonya made the statement. Foxworth notes that Donna was the only person who heard Tonya say, "Uncle L.D. tried to rape me." Be that as it may, that does not, in and of itself, render Tonya's statement unreliable.
¶ 20. Next, Foxworth claims the circuit court misapplied factors four and five: whether the statements were made spontaneously and the timing of the declarations. Foxworth's entire argument is as follows:
There is nothing in the record that supports the view that [Tonya's] statements were spontaneous. The timing of her statements is also at issue. [Tonya] had plenty of time to call out for help if this alleged incident was really taken [sic] place, yet she made no effort to call [Karen] or James Smith. She never said a word to her uncle James when he supposedly walked in through the den area and made eye contact with [Tonya]. Instead, Uncle James says, "What's up, cousin". [sic] [Karen,] her cousin, who is in the next room, does not hear or see *459 anything, and [Tonya] never said anything to her during the alleged incident. Her hearsay statement, whenever that really occurred, to her mother does not support any of the evidence presented at trial.
¶ 21. It appears that Foxworth is mistaken regarding the implications of factors four and five. Foxworth's argument centers on the concept that Tonya did not call out during the moment that Foxworth molested her. That is not the focus of factor four. Factor four is concerned with whether a declarant spoke spontaneously. Here, there is no doubt that Tonya's statement came after Donna asked her, "what's wrong." However, there is no indication that Donna provoked Tonya's statement or that the statement was the product of suggestion. Likewise, that Tonya did not call out as Foxworth molested her is not the focus of factor five. There is no indication among the record that it is in any way unusual for a child molestation victim to "freeze up" during the precise moment of the inappropriate touching. Further, Foxworth misstates the facts. Smith did not testify that he spoke to Foxworth as he witnessed the event in the den. Instead, Smith testified that he spoke to Foxworth before Foxworth molested Tonya. What is more, Smith and Foxworth were in an entirely different portion of Donna's home. Finally, there is no testimony contrary to Donna's and Tonya's that Tonya's declaration happened the evening after Foxworth molested her.
¶ 22. Next, Foxworth invokes factor six: the relationship between the declarant and the witness. Foxworth's entire argument is as follows:
Again, [Donna] is [Tonya's] mother. The relationship is far different than a witness that has no interest in a matter, and whose testimony has no implication of bias. There is no certainty that [Tonya's] statement was even made. There is simply no other witness who heard her make the claim that Foxworth tried to rape her, and there again is no evidence with the investigator's interview.
¶ 23. We find absolutely no merit to this vague argument. It strains credibility to claim that there is no certainty that Tonya told Donna that "Uncle L.D. tried to rape me." Donna swore, under oath, that Tonya made that declaration. That a child made the declaration to a parent does not indicate that a statement is unreliable. While other evidence may combine to suggest such, the parent/child bond, in and of itself, certainly does not carry an indicia of unreliability.
¶ 24. Finally, Foxworth seems to claim that the circuit court misapplied factor twelve: whether the declarant's age, knowledge, and experience make it unlikely that the declarant fabricated. As with Foxworth's two prior arguments, it is important to view Foxworth's argument in its entirety.
[Tonya] was 12 and one-half years old at the time of the alleged incident. Maturity development in a young child is certainly subjective. On the one hand this is a young girl who comes home every afternoon and has to look after herself until her mother gets home, most of the time of which she is visiting with [Karen] next door. She is not totally dependent upon her mother. On the other hand is the issue of her boyfriends. Based upon these facts, to accuse some one of attempted rape does not indicate an understanding of rape. By allowing the mother to testify as to what [Tonya] might have said, only causes prejudice and bias without a factual and evidentiary record to support her acvucusation. [sic]
¶ 25. It is exceedingly difficult to determine Foxworth's meaning. It is likewise *460 difficult to determine just how any of the foregoing argument applies to Tonya's age, knowledge, and experience or how it indicates whether Tonya could have fabricated. For one, Donna testified that she got off work around 3:30 p.m. and that she generally arrived home around 3:45 p.m. For another, as discussed above, there is absolutely, unequivocally no testimony that Tonya had a boyfriend. Foxworth attempts to suggest something entirely unsupported in the record. Counsel for Foxworth is the only individual to ever suggest such, and that suggestion was repeatedly rebutted by multiple witnesses.
¶ 26. At times, Foxworth addresses the admissibility of certain unspecified hearsay statements made by Investigator Ray. Foxworth does not point to any particular testimony. Applying leniency to our standards regarding presentation of arguments on appeal, we find Foxworth's only objection to Investigator Ray's testimony came after Investigator Ray testified, "I contacted [Donna,] who told me that her daughter, [Tonya,] had been molested." It is clear that Investigator Ray was merely recounting the facts of his investigation and that he was not offering that testimony as truth of the matter asserted. We find no error, reversible or otherwise, incident to this issue.
II. THE CIRCUIT COURT ERRED WHEN IT NEGLECTED TO CONDUCT A POST-TRIAL HEARING BASED UPON THE AFFIDAVIT AND SWORN TESTIMONY OF A JUROR THAT THE JURY WAS PRESSURED TO DELIVER A GUILTY VERDICT AND THAT A JUROR DID NOT DISCLOSE THAT SHE HAD BEEN MOLESTED AS A CHILD.
¶ 27. On September 7, 2006, the day before Foxworth's sentencing hearing, a private investigator apparently met with Carolyn Irvin, one of the jurors that found Foxworth guilty of count one. A transcript of the conversation between the private investigator and Irvin appears in the record. In brief, after the verdict, Irvin informed Foxworth's attorney that she and three other jurors doubted that Foxworth was guilty. Though the jury reached a unanimous verdict, Irvin claimed that she and three other jurors were coerced into finding Foxworth guilty because the jury had to reach a unanimous verdict before it could be discharged. Additionally, Irvin claimed that a female juror had been molested when she was a child. Irvin stated:
She said that she knowed [sic] it happened to her when she was a child and that she was saying it's possible for this to happen, but she didn't bring it out until we got to the second part of it, but she did make itI don't know how she had itI know this happened. Then when we got through almost the second part of it, that is when she really brought out that she was[interrupted by the private investigator].
¶ 28. Foxworth claims that, based upon Irvin's statements, the circuit court should grant either a judgment notwithstanding the verdict or a new trial. The circuit court overruled Foxworth's post-trial motions. Foxworth claims the circuit court erred. We disagree.
¶ 29. To be entirely clear, there is no evidence of jury tampering. Instead, the only question is whether some jurors coerced others. Ordinarily, a juror is prohibited from testifying about actions or statements during jury deliberation if that testimony is designed to impeach the verdict. Boyles v. State, 778 So.2d 144, 147(¶ 7) (Miss.Ct.App.2000). According to M.R.E. 606(b):

*461 Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.
¶ 30. M.R.E. 606(b) was specifically designed to prevent the type of matters that Foxworth would present through Irvin. It is up to individual jurors to vote according to their own conclusions. It is not entirely clear that Irvin voted guilty against her wishes. The following exchange is noteworthy:
Q. [D]id you tell me that you left felt as though you had been coerced to vote guilty?
A. Yes, because we had towe had to all come up with the same accord. And like I said, a couple of us in there didn't feel like it was the same accord.
Q. But you voted guilty instead?
A. Yes, we did.
Q. Would you tell me again the reason that you voted guilty instead of not guilty?
A. Because we had to come on our same accord and we was-the information that we had, that's what we were basing it on, but we didn't feel like he was guilty. But on that information that was given to us, we took from that and said, It's possible he could be guilty; it's possible.
Q. Was there reasonable doubt in your mind?
A. Yes, there was some doubts in my mind.
Q. Did someone tell you in the jury room that if ya'll were divided you would be there all day or be there until ya'll made a decision?
A. Yes it was told to us.
Q. Did it have some bearing on your reason for voting guilty?
A. Yes, because some of them wanted to hurry up and get through with it, because regardless of what I felt or what two or three others felt, it wasn't enough to say that we could hang the jury. We would have to be there. There are two or three of us that have some more opinions on this.
¶ 31. Considering the fact that there is no indication or allegation that anyone tampered with the jury or interfered in the deliberation process, Irvin's post-verdict statements are insufficient upon which to base a motion for JNOV or a motion for new trial. Additionally, the circuit court instructed the jury as follows:
Each of you must decide the case for yourself but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to re-examine your own views and change your opinion, if convinced it is erroneous, but do not surrender your honest convictions as to the weight or effect of evidence solely because of the opinion of your fellow jurors or for the mere purpose of returning a verdict. If there is any juror who is not convinced beyond a reasonable doubt of the defendant's guilt, it is his or her duty to vote "Not Guilty."
*462 ¶ 32. As for the allegation that some unnamed juror was the victim of sexual abuse or molestation, that too is insufficient under the circumstances. For one, during voir dire, Foxworth did not ask the venire whether anyone had been the victim of a crime, though the prosecution asked whether anyone would be unable to hear the case based on the subject. No one indicated that he or she would not be able to hear the case. There is no indication that the unnamed juror influenced the jury's decision or that other jurors felt compelled to find Foxworth guilty based upon that unnamed juror's experiences. By Irvin's statement, it appears that this unnamed juror did not even influence the jury's decision to find Foxworth guilty of count one. Finally, any such information as to the jury's deliberative process is strictly prohibited by M.R.E. 606(b).
III. THE STATE FAILED TO PROVE AN ESSENTIAL ELEMENT IN THE INDICTMENT IN THAT THE STATE FAILED TO PROVE THAT FOXWORTH WILLFULLY, UNLAWFULLY, FELONIOUSLY AND KNOWINGLY TOUCHED A CHILD FOR THE PURPOSE OF GRATIFYING HIS LUST OR TO INDULGE HIS DEPRAVED LICENTIOUS SEXUAL DESIRES.
¶ 33. In his final issue, Foxworth argues that the prosecution did not adequately prove that he intended to gratify his lust. This Court addressed a similar issue in Bradford v. State, 736 So.2d 464 (Miss.Ct.App.1999). In Bradford, this Court reversed and rendered a conviction for gratification of lust because the touching at issue took place in a car crowded with children and involved "contact of only the briefest duration consisting of a pinch that was followed by a laughing attempt to place the blame for the contact on one of the other children." Id. at (¶ 10). There was no evidence "of any attempt to grope or rub either of the children in a sexually suggestive manner" and there was no evidence that the defendant "was unnaturally aroused or sexually excited by this seemingly prankish behavior." Id.
¶ 34. By way of example, Bradford held that "touching in inappropriate parts of the child's body, overly demonstrative acts of affection, events occurring when the child is not fully clothed, or some evidence of sexual arousal by the defendant during the encounter, might be sufficient to permit the jury to draw a reasonable inference as to the improper purpose of the defendant's act." Id. at (¶ 9). Here, the evidence indicated that Foxworth put his hand down Tonya's shirt and touched her bare breast. Further, Tonya testified that she tried to get away from Foxworth and that he restrained her. There can be no doubt that, under such circumstances, the jury is permitted to draw a reasonable inference that Foxworth had an improper purpose in mind. Touching in this fashion goes beyond innocent "prankish" touching or affectionate behavior. We find no merit to Foxworth's final issue.
¶ 35. THE JUDGMENT OF THE MARION COUNTY CIRCUIT COURT OF CONVICTION OF CHILD MOLESTATION AND SENTENCE OF FIFTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH TWELVE YEARS TO SERVE AND THREE YEARS OF POST-RELEASE SUPERVISION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., CHANDLER, GRIFFIS, BARNES,
*463 ISHEE AND CARLTON, JJ., CONCURS. IRVING, J., CONCURS IN RESULT ONLY.
NOTES
[1] Due to the sensitive nature of this case, we use aliases to protect the victim's identity.