ROBERTS, J.,
for the Court:
¶ 1. A jury sitting before the Warren County Circuit Court found Thomas Ger-hold guilty of touching a child for lustful purposes. The circuit court sentenced Ger-hold to fifteen years in the custody of the Mississippi Department of Corrections (MDOC), with seven years suspended and eight years to serve, followed by five years of post-release supervision. Gerhold appeals and claims the circuit court erred when it allowed the prosecution to introduce the victim’s testimony that approximately one year prior to the incident that led to his conviction, Gerhold had touched her inappropriately while she had been sleeping, although she had initially believed that the earlier encounter had been a dream. Additionally, Gerhold claims his conviction is contrary to the overwhelming weight of the evidence. Finally, Gerhold argues that the circuit court improperly declined to enter a supplemental jury instruction when the jury, during its deliberation, sent the circuit court a note that contained a question. Finding no error, we affirm.
FACTS AND PROCEDURAL HISTORY
¶ 2. During April 2009, a mutual friend introduced Gerhold and Jane.[1] Jane had two daughters, Ann and Emily, from a previous relationship. Approximately one month later, Jane and her daughters moved in with Gerhold. Jane and Gerhold never married, although Gerhold had given her an engagement ring and then subsequently taken it back from her due to various disputes.
¶ 3. As of October 2010, Ann was twelve years old. On October 31, 2010, Ann was suffering from a cold. After everyone else went to bed, Gerhold remained awake. Gerhold frequently stayed up after Jane and her daughters went to sleep so that Gerhold could watch pornography and masturbate in the living room.
*1118 ¶4. Ann explained that she was “just starting to fall asleep” when Gerhold entered her room and “put his penis in her hand.” When Ann pulled her hand away, Gerhold told her that he was “just coming to check on [her],” and he walked out of her room. Ann said that Gerhold’s penis was wet, so she wiped her hand on her mattress, a blanket, and one of her stuffed toys. Ann later testified that she was shocked by what had happened and that “she didn’t know what to do.” After staying up “most of the night,” she told Jane about her encounter early the following morning. Jane later explained that she was “shocked” by Ann’s revelation.[2]
¶ 5. Following their usual routine, Jane drove Gerhold to work and dropped off Emily at school. Jane then drove Ann to a doctor’s office so that the doctor could treat Ann’s cold. Neither Ann nor Jane mentioned Ann’s encounter with Gerhold.
¶ 6. Not long after Jane and Ann returned home from the doctor’s office, Ger-hold called Jane and asked her to bring him lunch. Jane complied. Not wanting to leave Ann home alone, she brought Ann with her. Jane went inside Gerhold’s workplace and gave him his lunch. She then confronted Gerhold about his contact with Ann. According to Jane, Gerhold became angry because she believed Ann. Jane explained that Gerhold threw his hamburger at her and went outside and punched her car. Jane and Ann left and went directly to the Vicksburg Police Department and reported Gerhold. Ann gave a statement to Officer Lawanda Mal-lett.
¶ 7. Gerhold was arrested later that day. Gerhold also gave a statement to Officer Mallett. According to Gerhold, he had just finished masturbating when he heard Ann coughing. Based on Gerhold’s version of events, he rushed into Ann’s room to check on her. Gerhold explained that he could have failed to ensure that he had placed his penis inside of his boxer shorts. Gerhold later said that he reached over to feel Ann’s forehead. He claimed that his penis could have contacted Ann, but he denied that any such contact was intentional.
¶ 8. Officer Wayne Lynch went to Ger-hold’s house and used an ultraviolet light to find several stains on Ann’s mattress. Officer Lynch collected a small sample of Ann’s mattress so that it could be tested for Gerhold’s DNA. Officer Lynch also obtained DNA samples from Gerhold. Officer Lynch then sent Gerhold’s DNA and the sample of Ann’s mattress to a laboratory for testing. Kathryn Rogers, a forensic scientist, later confirmed that Gerhold’s sperm was present on the sample of Ann’s' mattress.
¶ 9. Gerhold was indicted for one count of touching a child for lustful purposes. He pled “not guilty” and went to trial. Prior to trial, Gerhold’s attorney moved to exclude Ann’s anticipated testimony that approximately one year prior to the October 31, 2010 incident, Gerhold had entered her room and touched her inappropriately, and Ann initially thought she had dreamed the event, but after the later inappropriate contact, was convinced that the earlier event had actually occurred. The circuit court held that it would allow testimony about the earlier event, but Gerhold would be allowed to cross-examine Ann to point out that she initially believed it had merely occurred in a dream.
¶ 10. When Gerhold went to trial, the prosecution called Ann as its first witness. *1119 As anticipated, Ann testified that approximately one year prior to the October 2010 event, Gerhold went into her room and “poked her finger with his penis.” Ann said that Gerhold’s penis had also been wet during the earlier event. Gerhold’s attorney vigorously cross-examined Ann regarding the fact that Ann had initially believed that she had dreamed the earlier contact. However, Ann adamantly stated that after the October 2010 event, she knew the earlier event had not been a dream.
¶ 11. Following Ann’s testimony, the prosecution called Jane, Officer Mallett, Officer Lynch, and Rogers. After the prosecution rested its case-in-chief, Ger-hold called his new girlfriend, Keri Crawford, who testified that she trusted Ger-hold around her four-year-old daughter. Gerhold also chose to testify.
¶ 12. Gerhold’s testimony was consistent with the statement that he gave to Officer Mallett. When asked why his sperm was found on Ann’s mattress, Ger-hold testified that he and Jane had “christened” the home that he and Jane had moved into by having sex in every room of the house, which included Ann’s room and, by extension, Ann’s mattress.
¶ 13. The jury found Gerhold guilty of touching a child for lustful purposes. The circuit court sentenced Gerhold to fifteen years in the custody of the MDOC, with seven years suspended and eight years to serve, followed by five years of post-release supervision. Following unsuccessful post-trial motions for a judgment notwithstanding the verdict or a new trial, Ger-hold appeals.
ANALYSIS
I. PRIOR BAD ACTS
¶ 14. Gerhold claims the circuit court erred when it allowed Ann to testify that Gerhold had touched her inappropriately approximately one year before the event that led to Gerhold’s conviction. We are mindful that “[a] trial judge enjoys a great deal of discretion as to the relevancy and admissibility of evidence. Unless the judge abuses this discretion so as to be prejudicial to the accused, [an appellate court] will not reverse [the trial judge’s decision].” Gore v. State, 37 So.3d 1178, 1183 (¶ 13) (Miss.2010) (citation omitted).
¶ 15. Gerhold acknowledges that prior instances of inappropriate contact between a defendant and a victim are generally admissible under Mississippi Rule of Evidence 404(b) to show the defendant’s intent or motive. See Wiltcher v. State, 724 So.2d 933, 936 (¶5) (Miss.Ct.App.1998) (“[S]ubstantially similar acts with the same person, that is, sexual acts of the same general type as those charged in the indictment, are probative and admissible.”) However, Gerhold argues that the circuit court should have found that Ann’s “dream” testimony was inadmissible under Mississippi Rule of Evidence 403. Rule 403 provides that, “[although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice....” According to Gerhold, the prejudicial effect of Ann’s testimony outweighed its probative value, because Ann was not certain whether she had merely dreamed that the earlier contact had occurred. Additionally, Gerhold argues that the circuit court should have prohibited Ann’s testimony based on Mississippi Rule of Evidence 602, which states that “[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he [or she] has personal knowledge of the matter.”
¶ 16. During Ann’s direct examination, she testified that after the October 2010 incident, she no longer thought that she had dreamed her previous encounter with *1120 Gerhold. Immediately after her previous encounter, Ann had told Jane what had happened, and Ann only concluded that it had been a dream after she spoke with Jane. During cross-examination, Gerhold’s trial attorney attempted to have Ann testify that she was not certain whether her previous encounter with Gerhold had been a dream. Under vigorous cross-examination, Ann testified that she did not see Gerhold’s penis during the earlier encounter, and she did not know how she was certain that Gerhold’s penis had been touching her finger. Gerhold’s trial attorney then asked Ann, “So we don’t know for sure if that actually happened, then, do we?” Ann responded, “I don’t know.” To emphasize Ann’s response, Gerhold’s trial attorney asked, “What was that answer?” Ann responded, “I’m sure it happened. I am positive. I am not — I’m not going to lie about something like that.”
¶ 17. Later during cross-examination, the following exchange occurred:
Q. Now, in 2010, October, we have a similar story from you, right?
A. Yes, sir.
Q. As in 2009, which you’re not sure about?
A. Yes, sir.
Gerhold’s trial attorney essentially addressed two substantially different subjects in his second question: (1) the 2009 incident was similar to the 2010 incident; and (2) Ann was not certain about the 2009 incident. It is unclear which subject Ann’s response addressed.
¶ 18. Gerhold’s trial attorney subsequently revisited the subject of the earlier encounter as compared to the October 2010 incident. To be precise, Gerhold’s trial attorney asked, “So, unlike in 2009, there’s no question about this, right? It actually happened?” Ann responded, “Yes, sir.” Again, Gerhold’s trial attorney included his own statement that Ann was uncertain about the 2009 incident, and he then asked Ann whether the 2010 incident actually occurred. The logical interpretation of Ann’s response is that she was affirmatively responding that the 2010 incident had actually happened.
¶ 19. Gerhold’s trial attorney addressed the 2009 incident one final time during the following exchange:
Q. So, basically the same set of facts you claimed happened in 2009 now has happened in 2010, a year later?
A. Yes, sir.
Q. Okay. No question in your mind?
.A. No, sir.
Q. Now, .since you don’t know what happened in 2009, when did you make the decision that it wasn’t a dream anymore?
A. When — when it — when it happened again in 2010.
Q. Okay, so it suddenly — it wasn’t a dream anymore?
A. No, sir.
Q. Even though you never saw it?
A. No, sir.
Q. And [you] don’t actually know what happened in 2009, do you?
A. No, sir.
Q. And suddenly in 2010[,] you wake up out of a sleep and [you] say, [“]there’s a penis, I see it, it’s in my hand,[”] right?
A. Yes, sir.
Ann had consistently testified that she was certain that Gerhold had touched her inappropriately in 2009. After Gerhold’s trial attorney told Ann multiple times that, contrary to her consistent testimony, she did not know what happened in 2009, Ger-hold’s trial attorney finally managed to have Ann testify according to his position.
*1121 ¶ 20. At thirteen years old, Ann was under intense cross-examination. She had testified numerous times that she was certain that she had not dreamed that Ger-hold had entered her room in 2009 and touched her with his penis. We do not find that the circuit court abused its discretion when it allowed Ann to testify that she was certain that the 2009 incident had occurred. At that point during Gerhold’s trial, the probative value of her testimony was not questionable. Within the context of other questions, Gerhold’s trial attorney told Ann that she was uncertain about the 2009 incident. Finally, after numerous attempts to characterize Ann as uncertain about the 2009 incident, Ann conceded somewhat.[3]
¶21. Gerhold’s trial attorney’s cross-examination created a question of fact for the jury to resolve. We do not find that the circuit court abused its discretion when it did not prohibit the testimony at issue. Ann testified that she was certain about what had happened. Ann was certainly in a position to have personal knowledge regarding her testimony. Furthermore, the circuit court subsequently instructed the jury as follows:
[Djuring the course of this trial[,] you have heard evidence of other crimes, wrongs, or acts that the defendant allegedly committed against the child. You cannot consider other crimes, wrongs, or acts of the defendant allegedly committed as any evidence that the defendant committed the crime charged in the indictment. The evidence of other crimes, wrongs, or acts that the defendant committed may only be considered by the jury as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. The evidence of other crimes, wrongs, or acts that the defendant allegedly committed may not be used to prove the charge of molestation of a child, as set forth in the indictment in this case.
There is a presumption that the jury follows the trial court’s instructions. Payne v. State, 462 So.2d 902, 904 (Miss.1984) (citation omitted). Because we do not find that the circuit court abused its discretion when it allowed Ann’s testimony, we find no merit to this issue.
II. WEIGHT OF THE EVIDENCE
¶ 22. Gerhold argues that the circuit court erred when it overruled his motion for a new trial. Under the circumstances, this Court “will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Bush v. State, 895 So.2d 836, 844 (¶ 18) (Miss.2005) (citation omitted). The supreme court has further instructed that when reviewing a trial court’s decision to deny a motion for a new trial:
The motion ... is addressed to the discretion of the court, which should be exercised with caution, and the power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict. However, the evidence should be weighed in the light most favorable to the verdict. A reversal on the grounds that the verdict was against the overwhelming weight of the evidence, unlike a reversal based on insufficient evidence, does not mean that acquittal was the only proper verdict. Rather, ... the court simply disagrees with the jury’s resolution of the conflicting testimony. *1122 This difference of opinion does not signify acquittal any more than a disagreement among the jurors themselves. Instead, the proper remedy is to grant a new trial.
Id. (footnote, internal citations, and quotations omitted).
¶ 23. Gerhold was charged with violating Mississippi Code Annotated section 97-5-23(1) (Rev.2006). Section 97-5-23(1) provides:
Any person above the age of eighteen (18) years, who, for the purpose of gratifying his ... lust, or indulging his ... depraved licentious sexual desires, shall handle, touch or rub with hands or any part of his ... body or any member thereof, any child under the age of sixteen (16) years, with or without the child’s consent, ... shall be guilty of a felony....
Gerhold argues that the weight of the evidence indicated that his penis had accidentally touched Ann. Additionally, Gerhold argues that because he had finished masturbating immediately before he went into Ann’s room, the weight of the evidence indicated that he did not have any lustful intent when he went into Ann’s room. Gerhold urges us to reverse the circuit court’s judgment and remand this matter for a new trial.
¶ 24. We quote the State’s entire argument as it appears in its brief:
The defense tries to claim the evidence is legally insufficient to prove that the touch was done “for the purposes of gratifying lust or indulging licentious sexual desires” as required by [section 97-5-23],
The testimony is that “he put his penis in my hand” and that she was awake and saw it. Further the penis was “wet.” And that there was enough on her hand to wipe off on her bedding and a toy bunny. Further expert testimony linked that [“]wet[”] stain by DNA evidence to be that of [the] defendant.
The record reflects substantial credible evidence supporting the jury’s determination that Lowe possessed the opportunity, place, and ability to download the material. The record also shows evidence of Lowe’s behavior upon learning of the investigation by the sheriffs department; namely, Lowe fled the state. Additionally, the jury heard testimony supporting the defense’s argument that someone other than Lowe downloaded the material from Lowe’s personal computer. Specifically, the defense argued that the computer was not in Lowe’s possession at the time it was recovered; the owner of the company where Lowe worked testified he had never seen Lowe with a computer at work; and the State’s own expert testified that someone other than Lowe could have downloaded the material. However, “when considering whether a jury verdict is against the overwhelming weight of the evidence, we ‘show great deference to the jury verdict by resolving all conflicts in the evidence and every permissible inference from the evidence in the State’s favor.’ ” Nunnally v. R.J. Reynolds Tobacco Co., 869 So.2d 373, 378 (¶ 9) (Miss. 2004) (quoting Venton v. Beckham, 845 So.2d 676, 684 (¶ 27) (Miss.2003)). Thus, although some evidence favors Lowe’s claim of innocence, the jury nonetheless found Lowe guilty; and that verdict does not sanction an “unconscionable injustice.” Accordingly, we find this issue is without merit.
Lowe v. State, — So.3d -, at - (¶ 31) (Miss.Ct.App.2012) (rehearing denied Mar. 12, 2013) ].
It is the position of the State that looking at the evidence that supports the *1123 verdict[,] there is not an unconscionable injustice in affirming the verdict of the jury and the sentence of the trial court. [4]
No relief should be granted on this claim of error.
¶ 25. Aside from the standard of review, the language that the State quotes from Lowe — an unpublished opinion at this time — is unrelated to Gerhold’s argument. The State utterly fails to elaborate regarding its reasoning. Based on the contents of the State’s brief, we can only surmise that the State’s argument is that because a conviction for exploitation of children was not contrary to the overwhelming weight of the evidence in Lowe, Gerhold’s conviction for gratification of lust is likewise not contrary to the overwhelming weight of the evidence.
¶ 26. However, despite the State’s largely unrelated response, the State correctly points out that Ann testified that Gerhold “put his penis in my hand.” Ann never characterized her contact with Ger-hold’s penis as incidental. Furthermore, the State correctly notes Ann’s testimony that Gerhold’s penis was wet. Ann testified that she wiped her hand on her mattress, and Gerhold’s semen was recovered from Ann’s mattress. Gerhold argues that such evidence is indicative that his lust had been satisfied. However, our review requires that we view the evidence in the light most favorable to the jury’s verdict. Accordingly, we decline to find that Ger-hold could not have possessed any lustful or licentious intent even if he had ejaculated in a different room immediately before he placed his penis in Ann’s hand. As this Court stated in Bradford v. State, 736 So.2d 464, 466 (¶ 9) (Miss.Ct.App.1999), “some evidence of sexual arousal by the defendant during the encounter ... might be sufficient to permit the jury to draw a reasonable inference as to the improper purpose of the defendant’s act.” Without question, the jury could have concluded that Gerhold was aroused when, immediately after he had been masturbating, he placed his penis in Ann’s hand. Suffice it to say, affirming the jury’s verdict would not be the equivalent of sanctioning an unconscionable injustice. It follows that there is no merit to this issue.
III. JURY INSTRUCTIONS
¶ 27. Finally, Gerhold takes issue with the circuit court’s decision to decline to enter a supplemental instruction after the jury sent the circuit court a note while the jury was deliberating. Specifically, the jury’s note contained the following written question: “Does the accidental touching by either part[y] during or after masturbation/ejaculation meet the intent of item #4?” “Item #4” referred to the fourth element of the charge as listed in jury instruction S-l. That instruction stated that the jury must find, beyond a reasonable doubt, that “Gerhold’s purpose in touching [Ann] was to gratify his lust or indulge his depraved, licentious sexual desires.” The circuit court’s response stated that “[t]his is a question for the jury to decide based upon all [of] the instructions given to you by the [c]ourt.”
¶ 28. According to Gerhold, the circuit court “improperly deferred a pure question of law.” Gerhold also argues that the circuit court’s response “was misleading and failed to resolve the jury’s confusion.” However, while the circuit court was considering its response to the jury’s question, the circuit court gave the prosecution and *1124 Gerhold’s trial attorney an opportunity to comment on an appropriate response. The prosecution recommended that the circuit court respond that the jurors had “been given the instructions of law from the [c]ourt and that they are to follow the instructions that they’ve been given.” The prosecution also opined that if the circuit court respond differently, the circuit court would be “highlight[ing] one instruction over another, and that’s improper.” Ger-hold’s trial attorney also said that the circuit court should respond by saying that “[tjhat’s a jury instruction that you need to decide, which is what the instructions say.” Gerhold’s trial attorney said that he had no objection when the circuit court stated that it would respond with a message that “[t]hat is a question for the jury to decide based on all instructions given to you by the [cjourt.”
¶ 29. When defense counsel agrees to a circuit court’s response to a jury’s question, a defendant is procedurally barred from arguing on appeal that the circuit court’s response was inappropriate. Hughes v. State, 90 So.3d 613, 624 (¶ 26) (Miss.2012). It follows that this issue is procedurally barred based on the lack of a contemporaneous objection during Ger-hold’s trial.
¶ 30. THE JUDGMENT OF THE WARREN COUNTY CIRCUIT COURT OF CONVICTION OF TOUCHING A CHILD FOR THE PURPOSE OF GRATIFYING HIS LUST AND SENTENCE OF FIFTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH SEVEN YEARS SUSPENDED AND EIGHT YEARS TO SERVE, FOLLOWED BY FIVE YEARS OF POST-RELEASE SUPERVISION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO WARREN COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR. BARNES, J., CONCURS IN PART AND IN THE RESULT.

. We substitute the fictitious names Jane, Ann, and Emily to protect the victim’s identity-

. Jane later testified that she could not decide whether she should kick Gerhold out or pack her and her daughter's things and move out She also said that she could not decide whether she should report Gerhold to authorities before or after she or Gerhold moved out.

. Gerhold’s trial attorney was obligated to zealously represent his client, so this opinion should not be construed as criticizing Ger-hold’s trial attorney for the manner in which he conducted his cross-examination.

. Our analysis of this issue does not contemplate "affirming ... the sentence of the trial court.” The circuit court’s sentence is irrelevant to whether the jury’s verdict was contrary to the overwhelming weight of the evidence.