KING, P.J,
for the Court:
¶ 1. Willie Cecil Chambers was convicted of murder in the Circuit Court of Pontotoc County, Mississippi, and sentenced to serve a term of life in the custody of the Mississippi Department of Corrections. Aggrieved by his conviction and sentence, Chambers has raised the following issues on appeal: (1) whether the trial court erred by overruling appellant’s motion for change of venue; (2) whether the trial court erred by allowing Mickey Baker to testify regarding the appellant’s drinking habits; (3) whether the trial court erred by allowing Dr. Thomas McGee to testify beyond his area of expertise; (4) whether the trial court erred by refusing the appellant’s proposed jury instruction D-10 which instructed the jury on malice aforethought; (5) whether the trial court erred by admitting in evidence enlarged photographs depicting the body of the victim; and (6) whether the verdict was against the overwhelming weight of the evidence.
¶ 2. Finding no reversible error, this Court affirms.
FACTS
¶ 3. On the afternoon of January 2, 1997, Chambers and James Box, a coworker and neighbor, drove from Pontotoc to Tupelo to purchase whiskey. While Chambers and Box were in Tupelo, Randy Ferguson, a long time acquaintance of Chambers’, and Jason Hopkins, Chambers’ grandson, stopped by to visit. Chambers was not home, but Hopkins decided to wait at the trailer for his return. When Chambers and Box returned to Pontotoc, the two stopped and purchased beer. They went to Chambers’ trailer where Chambers consumed several beers and some whiskey. Ferguson later returned to the trailer accompanied by Amy Simms and her baby and Nikki Rushing, who came along to visit Hopkins.
¶ 4. At Chambers’ trailer, Ferguson, Hopkins, and Chambers began to talk about Hopkins’ recent legal troubles. Chambers and Ferguson discussed Chambers’ use of his land as bail for Hopkins’ release from jail. Ferguson expressed his displeasure with Chambers’ participation in Hopkins’ bail arrangement and threatened to beat Hopkins if he got into trouble again. Chambers and Ferguson then started to argue. Chambers told Fergu *1181 son that Hopkins’ legal troubles did not concern him. Twice Chambers reached for his gun and threatened to shoot Ferguson. However, both men calmed down. Chambers sent Hopkins inside, and then began to talk with Ferguson when another argument ensued. Ferguson decided to leave after Simms and other guests asked him to do so. While leaving, Ferguson fell and dropped his cigarettes. Chambers bent down to pick them up and fell head first against the concrete injuring his nose and eye. James Box, who was outside during this time, sent Simms to get a rag so that both men could clean themselves. Simms returned with the rag and gave it to Ferguson. Ferguson handed the rag to Chambers and said “wipe the damn blood off your nose.” In response, Chambers pulled a gun and shot Ferguson. Chambers threatened to again shoot Ferguson.
¶ 5. On July 8, 1997, the grand jury of Pontotoc County indicted Chambers for the murder of Randy Ferguson. Tried and convicted on the murder charge, Chambers was sentenced to serve a life term in the custody of the Mississippi Department of Corrections. Chambers’ motion for judgment notwithstanding the verdict, or in the alternative, a new trial having been denied, he now appeals his conviction and sentence.
ISSUES AND ANALYSIS
I.
Whether the trial court erred when it overruled appellant’s motion to change venue?
¶ 6. This was a crime committed against a well-known member of the community with extensive media coverage up through the trial. Chambers contends that these factors created an irrefutable presumption that an impartial jury could not be impaneled. Davis v. State, 767 So.2d 986 (¶ 16) (Miss.2000).
¶ 7. When an application for change of venue is considered, it is left to the sound discretion of the trial judge and his ruling will not be disturbed on appeal unless it clearly appears that there was an abuse of discretion or that discretion was not properly exercised under the circumstances of the case. Beech v. Leaf River Forest Products, Inc., 691 So.2d 446, 448 (Miss.1997). See also Mississippi Highway Comm’n v. Rogers, 240 Miss. 529, 128 So.2d 353, 358 (1961). However, that discretion is not unfettered. Fisher v. State, 481 So.2d 203, 215 (Miss.1985). The trial judge must make an informed decision based on the evidence presented at the venue hearing coupled with his reasoned application of his sense of the community. Id. Additionally, the judge must be aware of the impact of publicity on the attitudes of the community. Id.
¶ 8. Chambers filed a motion for change of venue in October of 1997. The State argues that this motion for change of venue was not sworn as required by Miss. Code Ann. § 99-15-35 (Rev.1994) and was therefore, improperly before the court. However, the judge allowed Chambers to swear to the motion prior to the venue hearing, which cured this defect.
¶ 9. The record indicates that Ferguson was known in the community as a bail bondsman. During the venue hearing, Chambers relied on seven affidavits taken soon after the murder occurred and the State relied on testimony from the Ponto-toc Chancery Clerk and a supervisor. Chambers asserts that his sworn statement, two articles from the local newspaper approximately two years apart, and the affidavits from witnesses affirming his inability to receive a fair trial created a rebuttable presumption that he could not receive a fair trial in Pontotoc County. *1182 Holland v. State, 705 So.2d 307, 336 (Miss.1997). See also Harris v. State, 537 So.2d 1325, 1329 (Miss.1989). To rebut this presumption, the State relied on the voir dire of jury members. During voir dire, the jury members indicated that they could remain impartial.
¶ 10. Where there is conflicting evidence on whether or not the defendant can receive a fair trial, the opinion of the trial judge will be given deference. Burrell v. State, 613 So.2d 1186, 1190 (Miss.1993). The trial judge had the opportunity to consider the evidence, including the responses of prospective jurors and determine that evidence, which he found credible. Having done so, the trial judge ruled that a change of venue was not mandated. There is nothing in the record before this court of such quality and weight as to indicate the trial judge abused his discretion in denying the requested venue change. The trial court did not abuse its discretion in denying Chambers’ motion for change of venue.
II.
Whether the court erred in allowing witness Mickey Baker to testify regarding the defendant’s drinking habits?
¶ 11. Prior to trial, Chambers filed a motion in limine to exclude the testimony of his drinking habits as prior bad acts character evidence. The trial judge sustained the motion in part and provided specific instructions for allowing this evidence. The trial judge prohibited the State from getting into prior bad acts evidence unless the defense offered character evidence. The trial judge indicated that should the defense elect to first offer character evidence, the court would evaluate that evidence outside the jury’s presence and make a ruling on its admissibility. Chambers asserts that the trial court did not follow its ruling when it allowed Mickey Baker, a criminal investigator with the Mississippi Highway Patrol, to testify about statements Chambers made regarding his reasons for drinking alone. Baker testified that Chambers told him that he drank alone because of his tendency to get angry while drinking. The defense objected to this statement and the court overruled the objection.
¶ 12. The State asserts that Baker’s statement about Chambers’ drinking habits did not constitute prior bad acts evidence. The State maintains that this testimony was elicited to show Chambers’ propensity for becoming angry while drinking. This factor, the State contends, might have prompted Chambers’ decision to shoot Ferguson.
¶ 13. Mississippi Rule of Evidence 404(b) prohibits the use of evidence of other crimes, wrongs or acts of a person to show that he acted in conformity therewith on a particular occasion. However, MRE 404(b) does allow this evidence for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. We agree that the testimony presented evidence of Chambers’ state of mind or motive for the shooting and not of prior bad acts. Chambers and Ferguson were arguing and drinking when the shooting occurred and the State elicited none of the prior bad acts evidence complained of by Chambers. We conclude that the admission of the evidence in this case was not unduly prejudicial to Chambers. Accordingly, we find no merit in this issue.
III.
Whether the trial court erred in allowing Dr. Thomas McGee to testify as a forensic pathologist?
*1183 ¶ 14. Dr. McGee was allowed to testify about the distance and angle from which the gun was shot and how the injuries were inflicted. Chambers argues that Dr. McGee, an expert in the field of pathology, is not an expert in the field of forensic pathology, and thus was not qualified to testify about the angle and the distance from which the gun was shot or how the injuries were inflicted. His testimony should have been limited to what he observed while performing the autopsy.
¶ 15. “The decision whether an expert is qualified rests within the sound discretion of the trial judge.” T.K. Stanley, Inc. v. Cason, 614 So.2d 942, 951 (Miss.1992) (citing Smith v. State, 530 So.2d 155, 162 (Miss.1988)). “Unless we conclude that the discretion was arbitrary and clearly erroneous, amounting to an abuse of discretion, [the decision to admit expert testimony] will stand.” Roberts v. Grafe Auto Co., Inc., 701 So.2d 1093, 1098 (Miss.1997). In order to warrant reversal, the erroneous admission of evidence must be prejudicial to a party. Burnham v. Stevens, 734 So.2d 256 (¶ 47) (Miss.1999). See Century 21 Deep S. Properties, Ltd. v. Corson, 612 So.2d 359, 369 (Miss.1992).
¶ 16. Dr. McGee is a physician with a specialty in pathology and has performed thousands of autopsies, many of which involved gunshot wounds. Dr. McGee had been qualified as an expert in his field and permitted to testify in this case and in more than a dozen other cases. In this case, he testified about the location and entrance of the bullet that killed Ferguson, the path of the bullet and the damage it caused and the location at which it came to rest. In addition to that, Dr. McGee stated that the gun had been fired from at least two feet away. He based this opinion on the presence of powder residue on Ferguson’s shirt. Chambers objected to this testimony on the ground that this opinion was out of Dr. McGee’s scope of expertise as a pathologist. Chambers argued that only a forensic pathologist could render an opinion on the distance which a bullet traveled. However, the trial judge overruled the objection and allowed Dr. McGee’s testimony. The trial court found that Dr. McGee was qualified by experience to give an opinion on this issue. This finding is not inconsistent with the record, and accordingly, we find no abuse of discretion.
IV.
Whether the trial court erred in refusing the defendant’s proposed jury instruction D-10 which instructed the jury on malice aforethought?
¶ 17. Chambers offered an instruction on malice aforethought. The State objected to this instruction arguing that it attempted to define malice aforethought and was confusing. Chambers contends that a malice aforethought instruction is necessary in this case because the State presented no evidence showing that he planned or deliberated prior to the shooting. It is Chambers’ contention that since the State did not prove a plan or deliberation, then his conviction of murder should be reversed. Chambers argues that an instruction should have been given to direct the jury to reject a theory of accident or self-defense but still find him guilty of manslaughter. These contentions, however, do not support a reversal of the trial court.
¶ 18. We begin our analysis with the general observation that jury instructions must be considered as a whole. When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found. Collins v. State, 691 So.2d 918, 922 (Miss.1997) (citing Hickombottom v. State, 409 So.2d 1337, 1339 (Miss.1982)). See also *1184 Flight Line, Inc. v. Tanksley, 608 So.2d 1149, 1157 (Miss.1992).
¶ 19. In the case at bar, instruction D-10 would have told the jury that while malice aforethought is a necessary element of murder, actual malice at the time of a killing does not render a particular homicide a case of murder. Specifically, it would have told the jury that:
The Court instructs the jury that while malice aforethought is a necessary element of the crime of murder, it does not follow therefrom that the existence of actual malice at the time of the slaying would necessarily have the effect of rendering a particular homicide a case of murder. A person may be guilty only of manslaughter or justifiable homicide when slaying another even though the accused is bearing ill will toward his adversary at the time of the killing, if the act is done while resisting an attempt of the latter to do any unlawful act, or after such attempt shall have failed, if such anger or ill will is engendered by the particular circumstances of the unlawful act then being attempted, or the commission of which is thwarted, and is non-existent prior thereto. To constitute murder, the malice must precede the unlawful act which is being attempted or committed by the person killed, where the killing is done in resisting his attempt to do an unlawful act.
¶ 20. The instructions given in this case, when considered as a whole, satisfactorily set out all theories of defense asserted by Chambers. Several of the instructions inform the jury that malice is a necessary element of murder. Specifically, instruction P-5 distinguishes murder and manslaughter by stating that “[t]he crime of manslaughter is distinguished from murder by the absence or failure to prove that the defendant acted with the necessary malice aforethought or deliberate design.” In addition to that, several other instructions point to self-defense and heat of passion as options for the jury to consider. When all of the instructions are evaluated as a whole, we conclude that an adequate representation of the law was given. See Higgins v. State, 725 So.2d 220 (¶ 16) (Miss.1998).
y.
Whether the trial court erred in admitting into evidence enlarged photographs depicting the body of Randy Ferguson over appellant’s objection?
¶ 21. The State offered into evidence, over the defendant’s objection, three enlarged photographs of the victim depicting the location of the wound. The trial judge admitted the photographs finding them to be mild and probative to the trier of fact. Chambers argues that certain enlarged photographs depicting the body of the victim and the gunshot wound were prejudicial. Specifically, Chambers contends that exhibit eighteen depicted the body after the bullet was removed from the victim’s back and only served to inflame and prejudice the jury.
¶ 22. Absent a finding that the trial court abused its discretion, photographs of deceased victims have been deemed admissible. Gossett v. State, 660 So.2d 1285, 1293 (Miss.1995) (finding photographs depicting victim of multiple shooting admissible); Alexander v. State, 610 So.2d 320, 338 (Miss.1992) (holding that a photograph depicting open skull of victim admissible); Hewlett v. State, 607 So.2d 1097, 1102 (Miss.1992) (holding that photographs of charred bodies of victims are admissible). “This discretion originates from the primary test for admissibility, ‘whether the probative value of ... [the] photographs is substantially outweighed by the danger of unfair prejudice.’ ” Gossett, 660 So.2d at 1292 (citing Parker v. State, 514 So.2d 767, 771 (Miss.1986)).
*1185 ¶ 23. In the instant case, the State offered into evidence three enlarged photos which included a photo of the upper torso of the victim, a close-up of the entrance wound and a photo of the victim’s back and the incision to remove the bullet. The State argues that the photographs were admitted to show the location of the wound and to aid the pathologist in his testimony. The record indicates that Chambers objected to the introduction of these photos arguing that the enlarged photos would inflame and prejudice the jury. The trial judge viewed the photographs prior to hearing the pathologist’s testimony and overruled Chambers’ objection. The judge determined that the enlarged autopsy photographs were admissible to show the jury where the bullet was removed and to show the path of the bullet. It appears that the trial judge carefully weighed the probative value of the photographs against any probable prejudice to Chambers. We do not find that he abused his discretion in the admission of these photos.
VI.
Whether the jury verdict was against the overwhelming weight of the evidence.
¶ 24. Chambers argues that the State failed to show malice aforethought or deliberate design and therefore, the verdict of guilty of murder is against the overwhelming weight of the evidence. Chambers argues that the homicide occurred as a result of extreme anger because of an argument with Ferguson or alternatively, from being injured by the deceased and having to defend himself. Chambers suggests that this evidence tends to support manslaughter or self-defense rather than murder since he and the deceased were engaged in an argument.
¶ 25. The Mississippi Supreme Court has held that manslaughter is the unlawful killing of another human being without malice, in the heat of passion. Cook v. State, 467 So.2d 203, 206 (Miss.1985). In the case at bar, the jury determined that the killing was not committed without malice, in the heat of passion. When determining whether a jury’s verdict is against the overwhelming weight of the evidence, we accept as true the evidence which supports the verdict. Isaac v. State, 645 So.2d 903, 907 (Miss.1994). Reversal is proper only if we are convinced that the trial court abused its discretion in failing to order a new trial. Isaac, 645 So.2d at 907. Consistent with this standard, we find that the following evidence supports the jury’s verdict of murder: (1) Chambers pulled his gun twice and threatened to shoot Ferguson; (2) There was a lack of immediate provocation; (3) Chambers shot Ferguson once and threatened to shoot him again if he attempted to move; (4) Chambers failed to report the shooting or to seek assistance from other guests. Because there is substantial evidence, which supports the verdict, this Court finds no abuse of discretion in the denial of the request for new trial.
¶ 26. THE JUDGMENT OF THE PONTOTOC COUNTY CIRCUIT COURT OF CONVICTION OF MURDER AND SENTENCE TO SERVE A TERM OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. PONTOTOC COUNTY IS TAXED WITH COSTS OF THIS APPEAL.
McMILLIN, C.J., SOUTHWICK, P.J., PAYNE, BRIDGES, THOMAS, LEE, MYERS AND CHANDLER, JJ„ CONCUR. IRVING, J., CONCURS IN RESULT ONLY.